1  TODD M. SCHNEIDER (SB# 158253)
   TSchneider@schneiderwallace.com
2  W.H. "HANK" WILLSON, IV (SB# 233321)
   WWillson@schneiderwallace.com
3  SCHNEIDER WALLACE
   COTTRELL BRAYTON KONECKY LLP
4  180 Montgomery Street, Suite 2000
   San Francisco, California  94104
5  Telephone:  (415) 421-7100
   Facsimile:  (415) 421-7105
6  TTY:  (415) 421-1665

7  CHRISTINA DJERNAES (SB# 177522)
   christina@djernaeslaw.com
8  LAW OFFICES OF CHRISTINA DJERNAES
   1215 De La Vina Street, Suite K
9  Santa Barbara, CA  93101
   Telephone:  (805) 685-8189

10

   Attorneys for Plaintiffs
11 LEON TURO, LEILANI HAMMOCK
   AND THE PUTATIVE CLASS

12
   Attorneys for Defendant
13 ORACLE CORPORATION
   listed on page 2 of caption

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 LEON TURO AND LEILANI              CASE NO. C-06-2846 SBA
   HAMMOCK, on behalf of themselves
18 and all others similarly situated,    **CLASS ACTION**

19              Plaintiffs,             **AMENDED PROVISIONAL ORDER:
                                        CERTIFYING SETTLEMENT CLASS,**
20      vs.                            **APPROVING COLLECTIVE ACTION,
                                        AND APPROVING SETTLEMENT AND**
21 ORACLE CORPORATION,                 **NOTICES TO SETTLEMENT
                                        MEMBERS**
22              Defendant.
                                       The Hon. Judge Saundra Brown Armstrong
23

24

25

26

27

28

   Case No. C-06-2846 SBA                    [PROPOSED] PROVISIONAL ORDER CERTIFYING
                                             SETTLEMENT CLASS, APPROVING COLLECTIVE
                                                  ACTION, APPROVING SETTLEMENT

1   NANCY L. ABELL (SB# 088785)
    nancyabell@paulhastings.com
2   ELIZABETH A. BROWN
    (SB# 235429)
3   elizabethbrown@paulhastings.com
    Paul, Hastings, Janofsky & Walker LLP
4   515 South Flower Street
    Twenty-Fifth Floor
5   Los Angeles, CA  90071-2228
    Telephone:  (213) 683-6000
6   Facsimile:  (213) 627-0705

7   Attorneys for Defendant
    ORACLE CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The parties in this action for alleged violations of California and federal overtime and other wage-hour laws have submitted a joint motion seeking provisional approval of their Revised Joint Stipulation of Class and Collective Action Settlement Between Plaintiffs and Defendant; Settlement Agreement and Release ("Settlement Agreement"), provisional certification of the settlement classes, and provisional approval of a collective action, as well as approval of the proposed notices to those eligible to share in the settlement.  The Court has reviewed the motion, the proposed notices to those eligible for Settlement Awards, all other settlement documents, and the pleadings in the case as a whole, and has made the following FINDINGS:

1.      Plaintiffs filed this action April 26, 2006, against Oracle Corporation, seeking to represent current and former contracts administration and license migrations employees of Oracle in the United States.  Plaintiffs' Complaint alleges that Oracle misclassified certain of its contracts administration and license migrations employees as exempt from the overtime requirements of California and federal law, and thus failed to pay them overtime compensation for their overtime hours worked.  Plaintiffs also alleged that Oracle failed to ensure that its contracts administration and license migrations employees in California took their lawfully mandated meal and rest breaks.  Plaintiffs asserted causes of action, on behalf of themselves and the class, for violations of the Fair Labor Standards Act ("FLSA"); the California Labor Code; and California's Unfair Business Practices Act, California Business and Professions Code §§17200, *et seq.* ("UCL").  Plaintiffs sought payment of unpaid wages, civil penalties, liquidated damages, and attorneys' fees and costs.

2.      Oracle maintains that its contracts administration and license migrations employees were properly considered exempt from the overtime laws, and, as a result, Plaintiffs cannot state a claim for unpaid overtime.  Oracle further maintains that some of its contracts administration and license migrations employees worked no overtime.  In addition, Oracle maintains that its contracts administration and license migrations

employees in California (and throughout the United States) were provided with meal and rest periods, were timely paid all wages and other payments due and/or were and are not eligible for any penalties.  At this time all current United States employees of Oracle Corporation or Oracle USA, Inc. who are eligible for Settlement Awards are classified and paid as non-exempt employees.

3. The parties' settlement was reached after formal discovery and arms'-length negotiations.  The parties and counsel believe that this Settlement Agreement provides a fair and reasonable settlement for the Settlement Members, with respect to their claims for allegedly unpaid overtime wages, liquidated damages, interest, and other penalties due to Oracle's classification policy and wage-hour practices.

4. In discovery, Plaintiffs reviewed hundreds of pages worth of relevant documents provided by Oracle, and complete pay and time records (to the extent time records were actually kept) for the class of employees whom Plaintiffs represent with respect to this Settlement Agreement.  Plaintiffs took the deposition of Oracle's corporate designee regarding the allegations in the Complaint, and Oracle deposed both of the named Plaintiffs.  The terms of the Settlement Agreement are based on a thorough evaluation of this evidence and the underlying case law.

5. On March 1, 2007, the parties conducted a mediation of Plaintiffs' class action claims with Lynn Matityahu Frank, a respected and experienced mediator.  As a result of the parties' work during and following this mediation, the parties have entered into a class-wide settlement. The parties have since spent considerable time drafting a class-action settlement agreement that ensures that Settlement Members are (1) provided with notice of the Settlement Agreement and its terms; (2) will not lose their right to sue if they do not have actual notice of this Settlement Agreement; and (3) will not lose their right to sue under the FLSA even after receiving notice, unless they affirmatively opt in to this settlement.  The agreement provides, among other things:

(1) only those Settlement Members who affirmatively opt in to the Settlement Agreement will be subject to the release of FLSA claims;

2

(2)     California state law claims of employees who are working for an Oracle entity at the time notice is given and who work or worked for Oracle (or an Oracle entity) in California will be released only if they receive workplace notice of the settlement and do not opt out;

(3)     California state law claims of those who are former employees of Oracle (or an Oracle entity) and who worked in California will be released if they do not opt out, unless the Postal Service returns the final class action notice sent as undeliverable;

(4)     if the Claims Administrator does not agree with a Settlement Member's assertion regarding the weeks worked in each settlement subclass, the Claims Administrator will notify the Settlement Member, who then shall have twenty-one (21) calendar days from the date of the postmark on that letter from the Claims Administrator to opt out of the settlement;

(5)     several mechanisms ensure that Settlement Members receive notice of this Settlement, including workplace notice by mail and email, pre-mailing database searches, internet notice, and telephone calls to Settlement Members; and

(6)     the time to file objections and/or to opt out of the settlement is 65 days after the mailing of the Notice and Claim Form.

6.     Under the terms of the settlement, Oracle will deposit $1,187,500 into a qualified settlement fund.  The fund will be administered by an independent and highly experienced third-party Claims Administrator on a claims-made basis with unclaimed monies reverting to Oracle.  This amount is designed to cover an anticipated payment to Class Counsel of up to twenty-five percent (25%) of the total value of the claims made under the settlement, plus $20,000 for costs.  It also includes an estimated amount of $27,000 or less to the third-party Settlement Administrator for the costs of administering the notice and claims proceedings.

7.     The Settlement Agreement splits the class into two classes under Federal Rule of Civil Procedure ("FRCP") 23 and a collective under 28 U.S.C. §216(b):

(a)   California Overtime Class: All individuals who were employed in one of the job codes and job titles below at Defendant or Oracle USA, Inc. in the State of California between April 26, 2002 and the date(s) that Defendant or Oracle USA, Inc. made those individuals (or the individuals in their job code(s)) eligible for overtime compensation, for the purposes of Plaintiffs' claims for alleged unpaid overtime and waiting time penalties under the California Labor Code, and interest on those amounts alleged in the Complaint;

(b)   California Penalties Class: All individuals who are currently employed, or formerly have been employed, in one of the job codes and job titles below at Defendant or Oracle USA, Inc. in the State of California between April 26, 2002 and the date of entry of preliminary approval, for the purposes of Plaintiffs' claims for alleged denied meal and rest periods, record-keeping and other wage-hour penalties and interest on those amounts alleged in the Complaint; and

(c)   FLSA Collective: All individuals who were employed in any of the job codes and job titles below at Defendant or Oracle USA, Inc. in the United States between April 26, 2003 and the date(s) that Defendant or Oracle USA, Inc. made those individuals (or the individuals in their job code(s)) eligible for overtime compensation, for the purposes of Plaintiffs' claims for alleged unpaid overtime, liquidated damages, and interest alleged in the Complaint under the Fair Labor Standards Act.

8.   Under the terms of the Settlement, the California Overtime Class and the FLSA Collective will receive similar settlement shares per week worked. The California Overtime Class will receive slightly more than the FLSA Collective to account for the fact that California law requires the payment of overtime compensation for work in excess of eight hours in a day and affords waiting time penalties for unpaid wages, while

the FLSA does not.  The California Penalties Class will receive a much smaller share per week worked, to reflect the relative likelihood of recovery on those claims and the lower amounts made available by statute for them.  Within the Classes and Collective, each Settlement Member's settlement amount will vary proportionately based on the number of weeks he or she worked within the relevant time period.  If a Settlement Member is a member of more than one Class or a Class and a Collective, he or she will get his or her proportionate share for the amount of time he or she spent in each group.  The average payout per Settlement Member will be approximately $2,902 for the members of the California Overtime Class, approximately $2,186 for the FLSA Collective, and approximately $472 for the California Penalties Class, with some Settlement Members in more than one group.

9.     Using computerized address searches based on employment records, calls to the telephone numbers of Settlement Members, and workplace and internet notice, the Claims Administrator, Class Counsel and Oracle will make all reasonable efforts, as specified in the Settlement Agreement, to best ensure that each Settlement Member receives full and adequate notice of the settlement, including: the gross and net settlement amount, the requirement that the Settlement Member timely submit a claim form in order to participate in the settlement, an opportunity to submit objections to the settlement and appear at the final fairness hearing, and an opportunity to opt out of the settlement altogether.  Upon final approval, the Claims Administrator will ensure distribution of the settlement funds to the class.

10.     Defendant will pay to the California Labor and Workforce Development Agency the sum of Twenty-five Thousand Dollars ($25,000) under the Private Attorneys General Act of 2004, California Labor Code Sections 2698-2699 ("PAGA").  This payment will not change the release in any way, nor will it result in any increased payments to the Representative Plaintiffs.  Defendant will make this payment within 20 days after the Effective Date of the settlement, as defined in Paragraph 2.k. of the

Settlement Agreement, but the funds for it will not be paid from the Funds Available for Settlement.

11. Under the Settlement Agreement, FLSA claims are released only for those who opt in. *See* Settlement Agreement at ¶2.s and t. The California workers' California-law claims are released on an opt-out basis, but only if the individual is a current employee who received workplace notice or a former employee whose last mailed notice was not returned as undeliverable by the Postal Service. *See* Settlement Agreement at ¶¶2.s. and t and 13.

12. The Settlement Agreement does not purport to release any claims of Settlement Members other than those pled in the operative Complaint. In addition, any issues of personal jurisdiction over non-California employees is addressed by the fact that there is no release of FLSA claims except by those who opt in by filing a valid Claim Form, and thus accede to this Court's jurisdiction, in order to release their claims. *See* Settlement Agreement at ¶¶2.s. and t and 13. In addition, the Settlement Agreement provides that even after all of the procedures are undertaken to ensure that the Notice is sent to an updated address, Settlement Members who are not employed by an Oracle entity at the time notice is given and whose Notices are returned as undeliverable will not release their claims against Defendant. *See* Settlement Agreement at ¶19.h.

13. The Settlement Agreement provides that if a Settlement Member challenges his number of weeks worked and is not satisfied with the result of the review by the Claims Administrator, he or she may choose to opt out of the settlement. *See* Settlement Agreement at ¶30.f.

14. The Settlement Agreement proposes an award of Class Counsel fees in the amount of 25% of the total value of the claims actually made under the settlement. *See* Settlement Agreement at ¶29.b. This ties Class Counsel's fee to the actual participation in the settlement, but also reflects the Ninth Circuit's 25% "benchmark" for fee awards in common-fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989). Under this fee structure, each Settlement Member who receives an award effectively pays 25% of his or her award to Class Counsel as compensation for the work Class Counsel put into this case, as well as for the fact that without Class Counsel's efforts, the Settlement Members would not receive any award at all. This also represents a considerable discount from the standard one-third fee commonly taken in contingency-fee cases. *See Vizcaino*, 290 F.3d at 1051.

15.     Service or incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of the Settlement Members. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award for representative Plaintiff). In this action, the Representative Plaintiffs took steps to advance the interests of the class in this litigation. Both searched their files and produced all of the documents they had relating to their employment at Oracle. Both traveled from their homes to sit for day-long depositions by Oracle's attorneys. As a result of their efforts, the Settlement Members will benefit from substantial financial recoveries. In addition, the service payments to the Representative Plaintiffs not only reward them for their service and efforts on behalf of the Class, but also because they are giving a general release of claims that is far broader than the release given by the other Settlement Members. The time and effort payment of $7,500 to each is reasonable in light of the

1   efforts they made and risks they took in bringing and prosecuting this action to obtain the

2   Funds Available for Settlement totaling $1,187,500.

3     16. The Settlement Agreement provides notice to Settlement Members who are

4   currently employed by Oracle at their workplace, by emailing the Notice to their work

5   email addresses and mailing the Notice to Settlement Members at their work addresses.

6   Settlement Agreement at ¶19.  In addition, the Notice will be posted on Class Counsel's

7   website until the Claims Administrator provides the parties and the Court with a final

8   accounting of the mailing and payment of Settlement Awards.  *Id.*  The Settlement

9   Agreement also provides for extensive methods of ensuring that the Notice is mailed to

10   the correct address of Settlement Members who are no longer employed by Oracle.  The

11   Settlement Agreement provides that the Claims Administrator will do all of the following

12   *before* mailing the Notice and Claim Form: (1) receive the last-known addresses,

13   telephone numbers, and social security numbers of the Settlement Members; (2) run this

14   class list through the United States Postal Service's National Change of Address database

15   ("NCOA").  The NCOA database documents change of address requests filed with the

16   post office and can cover up to a four-year period; (3) perform address searches using

17   public and proprietary electronic resources which collect their data from various sources

18   such as utility records, property tax records, motor vehicle registration records (where

19   allowed) and credit bureaus; and (4) call last-known telephone numbers (and telephone

20   numbers updated through public and proprietary databases) to contact Settlement

21   Members to obtain their current addresses.  *Id.*  These processes will be repeated for

22   those Settlement Members for whom the Notice is returned as undelivered.  *Id.*

23     17. The proposed Notice provides information on the meaning and nature of the

24   proposed Settlement Agreement, the terms and provisions of the Settlement Agreement,

25   the monetary and other relief that the Settlement Agreement will provide Settlement

26   Members (including a clear explanation of the method of allocating and paying

27   settlement awards to claiming Settlement Members in the Classes and Collective, and of

28   the claims process), the procedures and deadlines for making a claim to a settlement

1  award, opting out of the settlement or submitting objections, the consequences of taking

2  or foregoing the various options available to Settlement Members, and the date, time and

3  place of the final settlement approval hearing.  Pursuant to Federal Rule of Civil

4  Procedure 23(h), the proposed Notice sets forth the amount of attorneys' fees and costs

5  sought by Plaintiffs, as well as an explanation of the procedure by which Plaintiffs'

6  counsel will apply for them.  In addition, the notice explains that Settlement Members

7  have the opportunity to object to, and request a copy from Plaintiffs' counsel of, the

8  Motion for Attorneys Fees and Costs.  The Notice also fulfills the requirement of

9  neutrality in class notices.  (*See* 4 NEWBERG § 8.39.)  It summarizes the proceedings

10  necessary to provide context for the Settlement Agreement and summarizes the terms and

11  conditions of the settlement, including an explanation of how the settlement amount will

12  be allocated between the named Plaintiffs, Class Counsel, the Claims Administrator, and

13  the Settlement Members, in an informative, coherent and easy-to-understand manner, all

14  in compliance with the Manual for Complex Litigation's observation that "the notice

15  contain a clear, accurate description of the terms of the settlement."  (MANUAL FOR

16  COMPLEX LITIGATION (THIRD) ("MANUAL") at § 21.312.)  The Notice clearly states that

17  the settlement does not constitute an admission of liability by Oracle.  It makes clear that

18  the final settlement approval decision has yet to be made.  Accordingly, the Notice

19  complies with the standards of fairness, completeness, and neutrality required of a

20  settlement class notice disseminated under authority of the Court.  (4 NEWBERG, §§ 8.21

21  and 8.39; MANUAL, § 21.311 and 21.312.)

22  18.  It is well-settled that class certification should be granted if the requirements

23  of FRCP 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied.

24  Rule 23(a) provides that class certification is appropriate if (1) the class is so numerous

25  that joinder of all members is impracticable, (2) there are questions of either law or fact

26  common to the class, (3) the claims or defenses of the representative parties are typical of

27  the claims or defenses of the class, and (4) the representative parties will fairly and

28  adequately protect the interests of the class.  *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*,

97 F.3d 1227, 1234 (9th Cir. 1996). All of the requirements of Rule 23(a) are met in this case for purposes of settlement. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

19. Satisfaction of the FRCP 23 factors for class actions *per se* shows that the requirements for a showing of the right to proceed as a FLSA collective action. *See Grayson v. K Mart Corp*., 79 F.3d 1086, 1096 (11th Cir. 1996); *Flavel v. Svedala Indus. Inc.*, 875 F.Supp. 550, 553 (E.D.Wis.1994) ("The 'similarly situated' requirement, in turn, 'is considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate,' or presumably, the Rule 20(a) requirement that claims 'arise out of the same action or occurrence.'")

20. All of the Settlement Members have worked for Oracle and may be readily identified through payroll records and other documents in the possession of Oracle. The proposed Classes and Collective consist, according to Oracle's records, of approximately 345 persons, making the proposed Classes and Collective sufficiently numerous.

21. Common questions of law and fact predominate. The common issues, which predominate in this action, include: (1) whether contracts administration and license migrations employees in the Covered Job Codes are properly qualified for any one of the various exemptions from the overtime laws; (2) whether contracts administration and license migrations employees in the Covered Job Codes are entitled to overtime compensation for their overtime hours worked; and (2) whether Oracle was willful in its failure to pay overtime compensation to its contracts administration and license migrations employees in the Covered Job Codes.

22. To satisfy the requirement of typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon, et al. v. Chrysler Corporation,* 150 F. 3d 1011, 1020 (9th Cir. 1998). Plaintiffs'

1   claims are sufficiently typical of the common claims presented.  Plaintiffs were contracts

2   administration and license migrations employees of Oracle in the Covered Job Codes

3   who worked overtime but were not paid overtime compensation, and who claim that they

4   were denied meal and rest periods from time to time during their employment.

5        23.   Representation is adequate if (a) the named representative appears able to

6   prosecute the action vigorously through qualified counsel; and (b) the class representative

7   is not disqualified by interests antagonistic to the remainder of the class.  *Lerwill v.*

8   *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  There is no conflict

9   between Plaintiffs and the Settlement Members in this case; Plaintiffs' claims are in line

10  with the claims of the class.  Plaintiffs have and will continue to aggressively and

11  competently assert the interests of the Classes and Collective, and Plaintiffs' counsel is

12  skilled and experienced in wage and hour class action litigation.  Plaintiffs submit that

13  class- and collective-action treatment of these claims is appropriate where, as here, the

14  legality of a policy or program as a whole is at issue.

15       24.   Under Rule 23(b)(3), class certification is appropriate if "the court finds that

16  the questions of law or fact common to the members of the class predominate over any

17  questions affecting only individual members, and that a class action is superior to other

18  available methods for the fair and efficient adjudication of the controversy."  For the

19  reasons discussed above, the Classes and Collective defined above satisfies the

20  predominance requirement.  Moreover, allowing the Settlement Members the opportunity

21  to participate in a settlement that yields an immediate and substantial benefit is highly

22  superior to having a multiplicity of individual and duplicative proceedings in this Court

23  and in arbitrations across the country.  It also is superior to the alternative of leaving

24  these important labor rights unredressed due to the difficulty of finding legal

25  representation and filing claims on an individualized basis.

26       25.   The decision to approve or reject a proposed settlement is committed to this

27  Court's broad discretion; a court's decision to approve a class action settlement may be

28  reversed only upon a strong showing of "clear abuse of discretion."  *Hanlon v. Chrysler*

1    *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d

2    1268, 1276 (9th Cir. 1992).

3          26.    This settlement is presumed by be fair because it was reached through

4    arm's-length negotiations, and sufficient investigation and discovery has taken place to

5    allow counsel and the Court to act intelligently, and counsel is experienced in similar

6    types of litigation.  *See, e.g., Neff v. Via Metropolitan Transit Authority*, 179 F.R.D. 185,

7    208 (W.D. Tex. 1998); *In Re Chicken Antitrust Litigation*, 1001 (N.D. Ga. 1980), *aff'd,*

8    669 F.2d 228 (5th Cir. 1982) ("The court encourages parties to resolve legal disputes

9    among themselves without judicial intercession, and therefore, their agreement will not

10   be disturbed unless after comparing the likely rewards of litigation with the relative

11   disadvantages of settlement, the court is convinced that the terms of the settlement are so

12   unfair, inadequate and unreasonable that approving it would be an abuse of discretion").

13         27.    Preliminary approval of the Settlement Agreement is appropriate, because it

14   within the range of possible final approval, also described as the range of reasonableness.

15   *See, e.g., In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-634 (2d Cir. 1980); *see also* 4

16   Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11.25 (4th ed. 2002)

17   ("Newberg").

18

19         Based on the foregoing findings, the Court makes the following ORDERS:

20

21         IT IS HEREBY ORDERED that the joint motion for provisional approval of

22   the settlement, provisional certification of settlement classes and provisional approval of

23   the collective action is GRANTED; and

24

25         IT IS HEREBY FURTHER ORDERED that:

26

27         1.     Defendant shall deposit with the Claims Administrator the sum of

28   One Million One Hundred Eighty-seven Thousand Five Hundred Dollars ($1,187,500) as

the Funds Available for Settlement as defined in and pursuant to the terms of the

Settlement Agreement in exchange for a release of claims pursuant to the terms of the

Settlement Agreement (*see, e.g.,* Settlement Agreement at ¶¶ 13-14, 19.h.), which sum

shall be used to pay Settlement Awards on a claims-made basis if the settlement is finally

approved by the Court.  Upon receipt of this sum, the Claims Administrator shall deposit

the entirety into a qualified settlement fund to which the parties' counsel mutually agree;

2.      Two classes are provisionally certified and a collective action is

provisionally approved, pending final approval at the Fairness Hearing:

(a)      **California Overtime Class**:  All individuals who were

employed in one of the job codes and job titles below at Defendant or Oracle USA, Inc.

in the State of California between April 26, 2002 and the date(s) that Defendant or Oracle

USA, Inc. made those individuals (or the individuals in their job code(s)) eligible for

overtime compensation, for the purposes of Plaintiffs' claims for alleged unpaid overtime

and waiting time penalties under the California Labor Code, and interest on those

amounts alleged in the Complaint:

| Covered Job Codes | Covered Job Titles | Eligibility Period |
|---|---|---|
| 70510 | Contract Administrator 1, sometimes referred to as Contract Specialist, Contract Analyst, Contractor, Senior Contract Specialist, VAD Contract Specialist and VAD Service Analyst (all level 1) | 4/26/02 – 9/19/04 |
| 70520 | Contract Administrator 2, sometimes referred to as License Migration Analyst, Contract Analyst, Contract Specialist, Contract Support, Contract Manager, Marketing Specialist, Senior Contract Analyst, Senior Contract Specialist, Senior Field | 4/26/02 – 10/15/05 |

| | | |
|---|---|---|
| | Contract Specialist, Team Lead (all level 2) | |
| 70530 | Contract Administrator 3, sometimes referred to as Contract Specialist, Senior Contract Specialist, Contract Manager, Licensing Consultant, Senior Contract Administrator, Subcontract Manager and Team Lead Contract Administration (all level 3) | 4/26/02 – 12/16/07 |

(b)     **California Penalties Class:** All individuals who are currently employed, or formerly have been employed, in one of the job codes and job titles below at Defendant or Oracle USA, Inc. in the State of California between April 26, 2002 and the date of entry of preliminary approval, for the purposes of Plaintiffs' claims for alleged denied meal and rest periods, record-keeping and other wage-hour penalties and interest on those amounts alleged in the Complaint:

| Covered Job Codes | Covered Job Titles | Eligibility Period |
|---|---|---|
| 70510 | Contract Administrator 1, sometimes referred to as Contract Specialist, Contract Analyst, Contractor, Senior Contract Specialist, VAD Contract Specialist and VAD Service Analyst (all level 1) | 4/26/02 – Date of Entry of Preliminary Approval |
| 70520 | Contract Administrator 2, sometimes referred to as License Migration Analyst, Contract Analyst, Contract Specialist, Contract Support, Contract Manager, Marketing Specialist, Senior Contract Analyst, Senior Contract Specialist, Senior Field Contract Specialist, Team Lead (all level 2) | 4/26/02 – Date of Entry of Preliminary Approval |
| 70530 | Contract Administrator 3, sometimes referred to as Contract Specialist, Senior Contract Specialist, Contract Manager, | 4/26/02 – Date of Entry Preliminary Approval |

| | Licensing Consultant, Senior Contract Administrator, Subcontract Manager and Team Lead Contract Administration (all level 3) | |

(c)    **FLSA Collective**:  All individuals who were employed in any of the job codes and job titles below at Defendant or Oracle USA, Inc. in the United States between April 26, 2003 and the date(s) that Defendant or Oracle USA, Inc. made those individuals (or the individuals in their job code(s)) eligible for overtime compensation, for the purposes of Plaintiffs' claims for alleged unpaid overtime, liquidated damages, and interest alleged in the Complaint under the Fair Labor Standards Act:

| Covered Job Codes | Covered Job Titles | Eligibility Period |
|---|---|---|
| 70510 | Contract Administrator 1, sometimes referred to as Contract Specialist, Contract Analyst, Contractor, Senior Contract Specialist, VAD Contract Specialist and VAD Service Analyst (all level 1) | 4/26/03 – 9/19/04 |
| 70520 | Contract Administrator 2, sometimes referred to as License Migration Analyst, Contract Analyst, Contract Specialist, Contract Support, Contract Manager, Marketing Specialist, Senior Contract Analyst, Senior Contract Specialist, Senior Field Contract Specialist, Team Lead (all level 2) | 4/26/03 – 10/15/05 |
| 70530 | Contract Administrator 3, sometimes referred to as Contract Specialist, Senior Contract Specialist, Contract Manager, Licensing Consultant, Senior Contract Administrator, Subcontract Manager and Team Lead Contract Administration (all | 4/26/03 – 12/16/07 |

15

| | level 3) | |
|---|---|---|

If this settlement is not finally approved by the Court, any Court order certifying the classes and provisionally approving the collective action shall be vacated without prejudice to the right of the parties to seek or oppose certification;

3.     RG2 Claims Administration, LLC is appointed as Claims Administrator, and estimated costs of administration in an amount not to exceed Twenty Seven Thousand Dollars ($27,000) may be paid from the Funds Available for Settlement as defined in the Settlement Agreement for services performed and costs incurred;

4.     A time and effort payment of Seven Thousand Five Hundred Dollars ($7,500) to each of the two Representative Plaintiffs from the total Funds Available for Settlement is preliminarily approved;

5.     Class Counsel shall have fifteen (15) days from the date this Order is entered to file their motion for reasonable attorneys' fees in an amount not to exceed twenty-five percent (25%) of the total value of the claims made (and not to exceed Two Hundred Eighty-one Thousand Three Hundred Seventy-five Dollars ($281,375)) and for costs of no more than Twenty Thousand Dollars ($20,000) (including all expert and consultant fees and costs) incurred for work already performed in this case and all of the work remaining to be performed in this case;

6.     The forms of notice accompanying the Settlement Agreement are APPROVED as they are consistent with due process requirements and the best practicable form of notice;

7.     Any Settlement Member (as defined in the Settlement Agreement), who wishes to file an objection to this Settlement, must postmark such an objection in writing, to the Claims Administrator no later than 65 days from the date of mailing of the Notice and Claim Form to the following address:

Oracle Claims Administrator:

RG2 Claims Administration LLC
P.O. Box 59479
Philadelphia, PA 19102-9479

Settlement Members may send courtesy copies of such objections to Plaintiffs' counsel and Oracle's counsel, at the following addresses:

Plaintiffs' Counsel:

Todd M. Schneider
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104

Christina Djernaes
1215 De La Vina Street
Suite K
Santa Barbara, CA  93101

Oracle's Counsel:

Nancy L. Abell
Paul, Hastings, Janofsky & Walker LLP
515 South Flower St., 25th Floor
Los Angeles, CA  90071

8.     Any Settlement Member who wishes to opt out of this Settlement must postmark an opt-out notice no later than 65 days from the date of mailing of the Notice and Claim Form, to the Claims Administrator at the address set forth in paragraph 7 above; and to be valid and effective, an opt-out notice must (i) state the opting-out Settlement Member's name (and, where different, any other name(s) used during the Settlement Member's period of employment with Oracle), address, and employee number or social security number; (ii) be signed by the Settlement Member; (iii) be timely postmarked to the Claims Administrator; and (iv) contain a statement the same as or substantially similar to the following:

I, [NAME], was or am employed by Oracle Corporation or Oracle USA, Inc. between [DATES of EMPLOYMENT] as a [COVERED JOB CODE and TITLE]. I hereby exercise my right to opt out of the Settlement, knowing that by doing so I waive any and all rights I may have to participate in that Settlement and to be paid any portion of the settlement proceeds that I would otherwise be eligible to receive under that Settlement.

9.      No later than 20 days after the Effective Date as defined in Paragraph 2.k. of the Settlement Agreement, Defendant shall pay to the California Labor and Workforce Development Agency the sum of Twenty-five Thousand Dollars ($25,000) in addition to the $1,187,500 Funds Available for Settlement, which Defendant intends to be a full resolution of any monies allegedly owed under the California Labor Code Private Attorneys General Act of 2004, California Labor Code Sections 2698-2699.  This sum shall not be paid from the Funds Available for Settlement, shall not change the class release in any way, and shall not result in any increased payment to the Representative Plaintiffs; and

10.     The following schedule will govern the class claims in this action:

| | |
|---|---|
| Settlement Member List to the Claims Administrator: | 5 business days after entry of preliminary approval |
| Deposit of Settlement Funds with the Claims Administrator, who will deposit the funds into Qualified Settlement Fund to Which Parties' Counsel Mutually Agree: | 5 business days after entry of preliminary approval |
| Attorneys' Fees Motion Filed: | 15 days after entry of preliminary approval |
| Notice and Claim Form Mailed to Settlement | 25 days after entry of preliminary |

| | |
|---|---|
| Members: | approval |
| Last Day to File Objections and Opt-Out Notices: | 65 days after mailing of Notice and Claim Form |
| Last Day to Submit Claim: | 100 days after entry of preliminary approval |
| Last Day for the Parties to Reject Settlement: | 105 days after entry of preliminary approval |
| Last Day to File Motion for Final Approval of Settlement: | 121 days after entry of preliminary approval |
| Last Day to File Response to Objections (if any): | 121 days after entry of preliminary approval |
| Fairness Hearing and Fee Approval Hearing: | 136 days after entry of preliminary approval |
| List of All Qualifying Settlement Members ("List"): | 10 days after Effective Date |
| Payment of Attorneys' Fees: | 10 days after Effective Date |
| Counsel's Changes, if any, to List: | 5 days after production of List |
| Deadline for Payments of Claims to Settlement Members and Named Plaintiffs: | 25 business days after Effective Date |
| Report on Settlement Administration: | 120 days after Effective Date |
| Plaintiffs File A Satisfaction of Judgment and Other Pleadings Required to Conclude the Case: | 125 days after Effective Date |

Dated:   10/16/08


_____

United States District Judge

[PROPOSED] PROVISIONAL ORDER CERTIFYING
SETTLEMENT CLASS, APPROVING COLLECTIVE
ACTION, APPROVING SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28